James S. HOGAN, as Next Friend for Ernest Lamar Murphy, Appellant,

v.

A. M. TURLAND, J. P. Precinct Number 4, Bell County, Texas, Appellee.

No. 11531.

Court of Civil Appeals of Texas.

Austin.

July 31, 1968.

Mitchell, Gilbert & McLean, Arthur Mitchell, Austin, for appellant.

Neil E. Clinkenbeard, Killeen, for appellee.

O'QUINN, Justice.

In our first consideration of this appeal we concluded that this Court did not have jurisdiction because the mandamus proceeding pertained to a criminal matter and the jurisdiction of courts of civil appeals is limited to civil actions. The appeal was ordered dismissed. 419 S.W.2d 383.

The Supreme Court in considering the case resolved a conflict heretofore existing among courts of civil appeals on this question and held that a mandamus proceeding is a civil rather than criminal action. 428 S.W.2d 316 (Tex.1968).

In compliance with the ruling of the Supreme Court, we have reinstated the appeal and proceed to consider the cause on its merits.

The basic facts of the case were stated in our original opinion and were repeated in the opinion of the Supreme Court.

We consider it appropriate, however, to set out here such facts as will reveal the nature of the case. Ernest Lamar Murphy, a minor, aged eighteen, was arrested by two Killeen policemen in the Yellow Cab Cafe about 5:30 o'clock on the morning of August 8, 1966, while the boy was playing a pin ball or shuffle board machine. No complaint had been filed and no warrant for the boy's arrest had been issued.

After being held in jail about two hours, the accused was taken before A. M. Turland, justice of the peace of precinct 4 in Bell County, and fined $15 on a complaint, prepared at the trial, charging disturbance of the peace.

Accused was re-committed to jail where he remained all day until a friend paid the fine by leaving the money with a police officer. When the boy's mother, Florence Hogan, and the boy's step-father, next friend in this appeal, learned of the matter, the mother sought first to obtain a new trial and then to appeal the case. Notice of appeal and an executed appeal bond were refused by the justice of the peace on August 10, the second day following the proceeding in justice court. As next friend, James S. Hogan, the accused's step-father, applied to the county court for mandamus which was denied after hearing. Hogan then prosecuted his appeal to this Court.

We hold that the county court erred in refusing the application for writ of mandamus to compel the justice of the peace to receive the appeal documents and to require that he forward to the county court the record necessary to effect an appeal.

It is settled in this State that if the accused has fully satisfied the judgment by paying the fine and costs, the case is terminated, and a review of the conviction is precluded. Mayes v. State, 152 Tex.Cr.R. 430, 214 S.W.2d 791; Woodard v. State, 163 Tex.Cr.R. 634, 295 S.W. 2d 659; Ex parte Dancer, 171 Tex.Cr.R. 381, 350 S.W.2d 544; Gates v. State, 332 S.W.2d 333 (Tex.Cr.App.1960); Winkler v. State, 252 S.W.2d 944 (Tex.Cr.App. 1952).

In Winkler v. State the court held, "The fine assessed and all costs adjudged against appellant having been paid, the question raised on this appeal has become moot." 252 S.W.2d 944, col. 2.

An exception to the rule was recognized by the Court of Criminals Appeals in

Mayes v. State, supra. In that case the general rule was enforced. But the Court observed that if the fine had been paid under duress, relief should not be denied merely because the accused pleaded guilty. "If he did so under duress," the Court stated, "then that issue would have to be presented to the trial court under proper procedure and brought to this Court on appeal from such order as the trial court made." 214 S.W.2d 791, 792, col. 1.

In Berume v. Hughes, 275 S.W. 268 (Tex.Civ.App., Fort Worth, no writ) the justice of the peace, after a plea of guilty, applied cash deposited with him in lieu of an appearance bond to payment of the fine and costs. The appellate court directed that an appeal be allowed unless it be found that the accused had paid the fine and costs or that payment had been by accused's authority. 275 S.W. 268, 271, col. 1.

The circumstances under which the 18-year-old accused was arrested, imprisoned, tried, fined, re-committed to jail, and later released through intervention of a friend, followed immediately by efforts of his mother to effect an appeal, are significant in determining whether duress attended either the plea or the payment of the fine, or both.

It seems clearly established that at the outset the arrest was illegal. The accused was arrested by two policemen in a reputable restaurant in Killeen early on the morning of August 8, 1966, while amusing himself at a pin ball or shuffle board machine. It is undisputed that accused at the time of his arrest was not disturbing the peace, the offense for which he was later fined. There is testimony that accused was waiting to take a bus to Belton to see about a job. When arrested and taken to jail, the accused had no complaint against him and no warrant had been issued for his arrest.

About 7:30 or 8 o'clock that morning the accused was taken out of jail and before Justice of the Peace Turland. No complaint had been filed at that time. A complaint form was filled out and signed charging that the accused "* * * did then and there unlawfully and willfully * Disturbing the peace against the peace and dignity of the State." (Emphasis on portion filled in).

During the brief proceedings of making a complaint and trying the accused the judge took time out to look after an inquest matter over the telephone. The time required to file on the accused and impose a fine was approximately fifteen or twenty minutes.

The police officer who signed the complaint testified at the hearing in county court that accused "* * * pled guilty before Judge Turland to that charge and was asked a couple of times if he wanted to call his mother or an attorney." The accused testified at the hearing that the suggestion he call his mother came only after the trial was over. The record is not clear whether the justice of the peace explained the nature of the charge to the accused or told him of his right to counsel prior to taking the plea. The record does show that the justice told the boy he could be fined up to $200. The accused declined to call his mother and told the judge he wanted to get it over with.

It is clear from the record that the justice of the peace was acquainted with the accused, his mother, and his step-father. The accused's mother and step-father operated a jewelry store in Killeen and it was known to the judge at the time of trial that the boy's step-father was confined in a hospital following a recent heart attack. The accused told the judge he did not want to call his mother under the circumstances. "You know how she is," the boy said.

When the accused was placed in jail early on the morning of August 8, the arresting officers booked him on charges involving car theft, use of an automobile without the owner's consent, and breaking and entering an automobile. These charges

were never filed, and at the hearing in county court it was admitted that other persons were involved or guilty. The accused testified he thought the charge against him when arrested would be vagrancy and told his mother when he got out of jail that he had been fined for vagrancy and for disturbing the peace.

Following the hearing before the justice of the peace, the accused was returned to jail, where he remained until 5 or 6 o'clock that afternoon. During the day the boy called his brother who was unable to help him. Late in the afternoon a friend of the accused went to the jail and paid fifteen dollars and the accused was released. The friend testified that he had had a telephone call from the accused's brother telling him that the boy was in jail and did not have money to pay a fine. After the accused was released, the two boys went to see the accused's mother, who then reimbursed the friend.

The money paid on the fine was placed in an envelope by a policeman at the jail where it was picked up next day by the justice of the peace. As soon as the mother learned about the matter from the accused late in the afternoon of August 8, she sought advice of a lawyer. Next morning, around 10 or 11 o'clock, the mother called the justice of the peace and asked him to give the boy another hearing. The justice declined to discuss the case and hung up the telephone. This incident appears to have occurred before the justice made a deposit of the fine. The mother closed her store temporarily and went to see the justice who told her the matter was closed. The following day, on August 10, the mother went to the office of the justice of the peace with written notice of appeal and an executed appeal bond, which had been prepared by a lawyer, and gave them to the justice, who refused to accept the papers.

In this case the issue of whether involuntary payment of a fine amounting under the circumstances to duress con-

stitutes non-waiver of the right of appeal appears to be presented squarely for the first time to an appellate court having jurisdiction to decide the question. The jurisdiction of the Court of Criminal Appeals does not extend to causes tried in the inferior courts in which the fine does not exceed $100. Article 4.03, Vernon's Ann. Code of Criminal Procedure (Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722). The jurisdiction of the Court of Criminal Appeals to issue mandamus extends only to writs that are necessary to enforce jurisdiction of the Court. Ex parte Rubison, 170 Tex.Cr.R. 314, 340 S.W.2d 815.

In Eaves v. Landis, Justice of the Peace, 96 Tex.Cr.R. 555, 258 S.W. 1056, "practically all of" a fine was paid from "a check then being turned over to the justice of the peace which was used by him to pay the fine" for an accused serving time in jail after she had pleaded guilty to "being a vagrant." The accused later concluding to appeal from the judgment, "prepared and presented to the justice of the peace an appeal bond, and he refused to make out for her a transcript * * * for the reason that he was of the opinion the judgment was settled." 258 S.W. 1056, 1057, col. 1.

After failing in county court to obtain writ of mandamus, the accused brought "the matter up for some kind of review at" the hands of the Court of Criminal Appeals. The Court held " * * * that we have no right to issue writs of mandamus in any kind of cases except those involving the enforcement of our jurisdiction."

Even at that time (1924) the Court of Criminal Appeals must have discerned an inadequacy in the statutory law to afford relief in such cases. The Court observed that:

"Under our *statutes* authority to issue writs of mandamus in *matters of the character* now sought to be here invoked *if same exists at all* seems to be reposed in other courts than ours." 258 S.W. 1056, 1057, col. 1. (Emphasis added).

Until the Supreme Court's decision in this case (428 S.W.2d 316) the courts of civil appeals were divided in their views as to whether an appeal in "matters of this character" would lie to these courts. In the limited number of such cases in which an appeal has been entertained by the courts of civil appeals, only one cause involved the issue of involuntary payment of a fine. Berume v. Hughes, supra. In that case the court directed that the appeal be allowed unless it should be found that the cash deposited with the justice of the peace in lieu of an appearance bond, and applied by him to the fine, was so applied without authority from the accused.

It is not clear from the report of Eaves v. Landis, supra, how the check used to pay the fine came into the hands of the justice of the peace. The Court reported that the accused, after pleading guilty and being fined $1 and costs, "was placed in jail and there kept for 5 days; a check then being turned over to the justice of the peace which was used by him to pay the fine of applicant and another woman, or practically all of said fines. Applicant was then released."

We are aware that our holding under the facts of this case, that the fine was paid involuntarily, is without support of authorities in this State having passed on the specific point. As we have pointed out, the principle involved clearly was recognized in Mayes v. State, supra, and in Berume v. Hughes, supra. The criteria for determining when payment of the fine is so involuntary as to constitute duress as a matter of law and preclude waiver of the right of appeal have never been stated by a court of this State.

We have examined authorities from other jurisdictions in which this issue has been raised. We find the various jurisdictions are not in accord on the question of allowing an appeal after payment of a fine in cases in which it is urged that the fine was paid involuntarily and under duress. 4 Am.Jur.2d, Appeal and Error, sec. 272, pp.

766–767; 18 A.L.R. 871; 74 A.L.R. 638; and 9 A.L.R.3d 462 afford extensive treatment of these cases.

In some jurisdictions the question is passed on as a determination of whether payment was made with intent to waive the right of appeal. In an Ohio case the fact the defendant pursued his procedural steps to appeal, both before and after payment of the fine, led the court to conclude that waiver of appeal could not be presumed from payment alone of the fine and costs. Village of Avon v. Popa, 96 Ohio App. 147, 121 N.E.2d 254, 54 Ohio Ops. 226. In a New Hampshire court the right of appeal was upheld from a municipal court in which the defendant had been fined on a plea of guilty but without being fully informed of his rights. State v. Belmestieri, 93 N.H. 262, 40 A.2d 836.

The justice of these cases, and of others reaching similar results, appeals to us under the facts of this case. It seems clear from the record that the youthful accused pleaded guilty, if in fact he did plead guilty, for the reason that he wanted to get it over with and not because he was in fact guilty of the offense charged. The justice of the peace heard no evidence, and under the law he was not required to hear evidence on a plea of guilty. But in the hearing before the county court strong doubt was raised that the accused was guilty of any offense related to disturbing the peace.

It was undisputed that the boy told his mother he had been fined for vagrancy and disturbing the peace. A complaint properly explained to the accused it appears would have disabused his mind of any such misapprehension. The boy was told by one of the arresting officers, apparently while the justice was in another room preparing the complaint, that if accused pleaded guilty to vagrancy, it would cost the boy "about fifteen dollars fine." The accused testified at the hearing in county court that he pleaded guilty to vagrancy. When asked what the justice said after imposing the fine, the accused replied, "I forgot how many days he

said by serving in jail, or else to pay a fifteen dollars fine. * * * So I preferred to pay the fine."

It is shown repeatedly in the record that the accused boy was eager not to have his plight brought to the attention of his mother because of his step-father's critical condition at the hospital. The facts surrounding this attitude on the part of the boy were known to the justice of the peace. The justice was not dealing with a stranger or a transient. The accused had lived in Killeen eight or ten years, had attended school there, and his parents conducted a jewelry business in Killeen.

The boy's mother sought a rehearing, first by telephone and then by personal visit to the justice of the peace, on the day following the boy's trial and the morning after she had learned of the case. Within the time allowed by law the mother filed written notice of appeal and an appeal bond which are in the record and appear in proper order.

The grounds for appeal, stated briefly, were four: (1) the judgment was void because entered prior to filing of written complaint; (2) the defendant was not given proper notice of the offense with which he was charged comporting with his tender years and inexperience; (3) defendant was not given the opportunity to secure counsel; and (4) there was no evidence on which a valid conviction for disturbing the peace could be based.

The application for writ of mandamus filed in county court alleged that the plea of guilty was not voluntary but was coerced, and that under all circumstances the plea was made under duress. Thus the issue was clearly presented to the county court.

The accused testified in county court that he "pleaded guilty to get the trial over with and everything." In the hearing before the county judge, counsel for the applicant made clear the position of accused that the plea of guilty and subsequent payment of the fine, having been made involuntarily and under duress, did not amount to an admission of guilt and did not constitute waiver of the right of appeal. The issue was squarely before the county court and is before us on appeal. Mayes v. State, supra.

It is apparent to us from examination of the record that the accused is a youngster entirely wanting in sophistication. A reading of his testimony reveals a boy seemingly respectful and cooperative, without guile, and one so lacking in understanding of proceedings in courts as to be confused with respect to very simple matters. The accused was unable to distinguish, with regard to when he signed the papers, between the receipt he signed for his personal effects when released from jail and the written notice of appeal and the bond he signed two days later.

The county court, seeing the accused's confused state, gave the boy time to examine the appeal papers during a pause in the proceedings. The accused was unable, after this reading, to remember whether he signed the two appeals documents upon being released from jail or while still before the justice of the peace the morning he was fined. The record is clear that the notice and appeal bond were prepared by an attorney the day following the trial.

When counsel for appellee objected that counsel for appellant asked the accused a leading question in the course of his testimony, the trial court commented, "I think he [counsel] is trying to clarify this. I think the witness is so confused that you couldn't possibly lead him. Go on."

It is our opinion that the record shows that justice was not done. The proceedings before and during the trial did not afford the accused the opportunity, considering his youth and lack of experience, to protect his rights. It is doubtful that this accused understood either the nature of the charge against him or the real consequences of such plea as he may have made. The facts show conclusively that the boy wanted to make a plea or do anything necessary to keep his

mother from being alarmed under the circumstances of the step-father's critical condition. The accused after the trial did not try to reach his mother but appealed to a brother. Finally through the intervention of a youth who was a friend of the accused the fine was paid in lieu of serving in jail the number of days the justice of the peace had told the accused he would have to serve if he did not pay the fifteen dollars.

We find nothing in the record to indicate that the accused had any previous record in court or any prior experience with trials, fines, or jail sentences. The record discloses a situation in which a teenage boy after being held in jail for two hours was taken before a justice of the peace by the arresting officer to have a written complaint made out and a fine imposed, with the entire legal process lasting about twenty minutes. The youngster was given the hard choice of calling his distraught mother, the accused said after he had already been tried, or going to jail for a number of days in lieu of paying fifteen dollars.

While we do not find that any threats or force were used to intimidate the accused to compel him to plead guilty and later to obtain money for his fine, it cannot be said under all the circumstances that either the plea or the payment of the fine was purely voluntary. Both the plea and the payment of the fine under the circumstances were induced involuntarily and under duress. The duress need not be such as was created by the trial court or the officers performing functions for or in the court. In this case the inexorable duress flowing from the circumstances surrounding the accused was known fully to the justice of the peace. The unremitting action of duress to influence the decisions of the young and inexperienced accused was by the court consciously tolerated and permitted when some other course pursued by the court could have brought about justice without coercion.

The judgment of the county court is reversed and judgment is here rendered. We direct that writ of mandamus issue ordering the appellee to accept notice of appeal and appeal bond in the cause in which Ernest Lamar Murphy is defendant charged with disturbing the peace and to forward to the county court the record necessary to effect an appeal.