**Ex parte Cooper E. GILES.**

**No. 47859.**

Court of Criminal Appeals of Texas.

Dec. 5, 1973.

Rehearing Denied Jan. 9, 1974.

Donald W. Rogers, Jr. and Gerald R. Goynes, Houston, for appellant.

Carol S. Vance, Dist. Atty., and James C. Brough, Asst. Dist. Atty, Houston, Jim D. Vollers, State's Atty., and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

These proceedings present the question of the constitutionality of Section 6.01(c) of the Texas Controlled Substances Act, Vernon's Ann.Civ.St. art. 4476–15 (Acts 1973, 63rd Leg., Ch. 429, p. 1132—effective August 27, 1973), which has been codified as Article 725f, Vernon's Ann.P.C.

The relator was convicted in the 178th District Court of Harris County on October 18, 1972, of the felony offense of possession of marihuana (on the 15th day of August, 1971) in Cause No. 168,817.

The trial upon relator's plea of guilty was before a jury, which assessed his punishment at thirty (30) years. On December 19, 1972, sentence was imposed and notice of appeal was given.

The appellate record has not been filed in this court, and on October 10, 1973, the relator filed a written motion in the trial court electing to be sentenced under the provisions of Section 6.01(c) of the Texas Controlled Substances Act, which reads as follows:

"In a criminal action pending, on appeal, or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, *shall* be assessed punishment under this Act if he so elects by written motion filed with the trial court requesting that the court sentence him under the provisions of this Act."[1] (emphasis supplied)

The trial court refused such motion and relator now seeks a writ of mandamus to compel the Honorable Dan Walton, Judge of the 178th District Court to sentence him in accordance with the provisions of the aforementioned statute.

Respondent urges that Section 6.01(c) of Article 725f, supra, is unconstitutional insofar as it infringes upon the power of the Governor to grant pardons and commutations pursuant to Article IV, Sec. 11 of the State Constitution, Vernon's Ann.St., that the procedure of sentencing is not covered in caption of the bill which enacted the Texas Controlled Substances Act in violation of Article III, Sec. 35 of the Texas

Constitution, and that the said Section 6.-01(c) infringes upon the constitutional right to trial by jury.

## JURISDICTION

At the outset we must determine if this court has jurisdiction of these proceedings.

Article V, Sec. 5 of our State Constitution provides in part:

"The Court of Criminal Appeals shall have appellate jurisdiction coextensive with the limits of the State in all criminal cases of whatever grade, with such exceptions and under such regulations as may be prescribed by law.

"The Court of Criminal Appeals and the Judges thereof shall have the power to issue the writ of habeas corpus, and under such regulations *as may be prescribed by law*, issue *such writs* as may be necessary to enforce its own jurisdiction. . . ." (emphasis supplied)

Article 4.03, Vernon's Ann.C.C.P., also provides that this court shall have appellate jurisdiction coextensive with the limits of the State in all criminal cases, and Article 4.04, Vernon's Ann.C.C.P., provides that the "court and each member thereof shall have, and is hereby given, power and authority to grant and issue and cause the issuance of writs of mandamus and certiorari agreeable to the principles of law regarding said writs, whenever in the judgment of said court or any member thereof the same should be necessary to enforce the jurisdiction of said court."

Thus, this court may issue writs of mandamus to enforce the court's appellate jurisdiction or its original jurisdiction to issue writs of habeas corpus, but this is a limited use of such writ, for the Court of Criminal Appeals has no general power to issue writs of mandamus. *Millikin v. Jef-*

1. Although relator's conviction is for possession of marihuana, it is to be observed that Section 6.01(c) is not limited to marihuana related offenses as Section 4.06, which was declared unconstitutional in Smith v.

Blackwell, 500 S.W.2d 97 (Tex.Cr.App. 1973). Section 6.01(c) applies to any criminal act arising under the former law and now covered by the Texas Controlled Substances Act.

frey, 117 Tex. 134, 299 S.W. 393 (1927); Ex parte Boehme v. State, 158 Tex.Cr.R. 597, 259 S.W.2d 201, 203 (1953); Ex parte Rubison, 170 Tex.Cr.R. 314, 340 S.W.2d 815 (1960); Eaves v. Landis, 96 Tex.Cr.R. 555, 258 S.W. 1056 (1924); Hogan v. Turland, 430 S.W.2d 720 (Austin Court of Civil Appeals—1968); Bradley v. Miller, 458 S.W.2d 673 (Tex.Cr.App.1970).

Is our appellate jurisdiction here involved so as to afford us the authority to issue the writ of mandamus?

■ We cannot conclude that it is. The appellate record has not yet been received by this court, and the trial court still retains jurisdiction of the cause. See Articles 40.09, 44.11, Vernon's Ann.C.C.P.; Rangel v. State, 408 S.W.2d 231 (Tex.Cr.App.1966); Brill v. State, 408 S.W.2d 232 (Tex.Cr.App.1966); Tucker v. State, 416 S.W.2d 437 (Tex.Cr.App.1967). Cf. Phillips v. State, 429 S.W.2d 897 (Tex.Cr.App. 1968); Carrillo v. State, 480 S.W.2d 612 (S.Ct.1972).

It is clear that the refusal of the trial court to act under the provisions of Section 6.01(c) of the Texas Controlled Substances Act does not infringe upon our appellate jurisdiction so as to authorize this court to consider the issuance of a writ of mandamus.

■ Nevertheless, in light of the relator's allegations, supported by the record, that he would be entitled to immediate relief if the trial court acceded to his request to sentence him under the penalty provisions of the Texas Controlled Substances Act, his possession of marihuana being shown to be four grams,[2] we shall consider the pleadings as an application for writ of habeas corpus. Cf. Vance v. Clawson, 465 S.W.2d 164 (Tex.Cr.App.1971) cert. den., Pruett v. Texas, 404 U.S. 910, 92 S.Ct. 226, 30 L.Ed.2d 182, rehearing den., 404 U.S. 996, 92 S.Ct. 529, 30 L.Ed.2d 548 (wherein the application for writ of prohibition was treated as an application for writ of mandamus).

We now undertake consideration of respondent's contention that the provisions of said Article 6.01(c) would infringe on the Governor's constitutionally granted powers of clemency.

## CONSTITUTIONAL AUTHORITY TO GRANT CLEMENCY

Article IV, Sec. 11, Vernon's Ann.St. Const., grants to the Governor the power, "after conviction," and upon the recommendation of the Board of Pardons and Paroles to grant reprieves and commutations of punishments and pardons. He is also given the power to remit fines and forfeitures.[3]

2. Section 4.05 of the Controlled Substances Act provides that possession of two ounces or less of marihuana is a Class B misdemeanor, while possession of four ounces or less but more than two ounces of marihuana is a Class A misdemeanor, while possession of more than four ounces is a felony of the third degree. Section 4.01 provides a Class B misdemeanor carries a penalty of a term not to exceed 180 days in jail or by a fine not to exceed $1,000 or by both such fine and imprisonment. A Class A misdemeanor carries a penalty of a term not to exceed one year in jail or a fine not to exceed $2,000 or by both such fine and imprisonment. A third degree felony carries a penalty of not less than two nor more than ten years in the Department of Corrections.

Since a gram is 0.035 ounces, appellant's possession of four grams would be considered a Class B misdemeanor under the provisions of the Texas Controlled Substances Act.

3. Article IV, Sec. 11 of our State Constitution reads in part as follows:

"In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons; and under such rules as the Legislature may prescribe, and upon the written recommendation and advice of a majority of the Board of Pardons and Paroles, he shall have the power to remit fines and forfeitures. The Governor shall have the power to grant one reprieve in any capital case for a period not to exceed thirty (30) days;

Recently in Smith v. Blackwell, 500 S.W.2d 97 (Tex.Cr.App.1973), this court had occasion to briefly discuss the history of such constitutional provision, and it need not be repeated here.

■ It is observed that the people of a state are at liberty to lodge this power in any branch of government they may so desire. Ex parte Miers, 124 Tex.Cr.R. 592, 64 S.W.2d 778, 780 (1933). In Texas the power has long been lodged in the Executive.

Our State Constitution also provides in Article II, Sec. 1 thereof that the power of government shall be divided in three distinct departments, Executive, Legislative and Judicial, and further provides ". . .; *and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.* (emphasis supplied)

■ This clearly worded Article has been interpreted to mean that a power which has been granted to one department of government may be exercised only by that branch to the exclusion of the others. Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912). And any attempt by one department of government to interfere with the powers of another is null and void. Ex parte Rice, 72 Tex.Cr.R. 587, 162 S.W. 891 (1914). This is a well established maxim of constitutional law.

If there has been any remission by the people of the Governor's power of clemency after conviction in criminal cases, it is to be found in Article IV, Sec. 11A of our State Constitution, which reads:

"The Courts of the State of Texas having original jurisdiction of criminal actions shall have the power, *after conviction,* to suspend the imposition or execution of sentence and to place the defendant upon probation and to reimpose such sentence, under such conditions as the Legislatue may prescribe." (emphasis supplied)

## SECTION 6.01, TEXAS CONTROLLED SUBSTANCES ACT

Section 6.01(a) of the Texas Controlled Substances Act provides that "[E]xcept as provided in Subsections (b) and (c) of this section," the Act applies only to offenses committed on or after the effective date of the Act, and that offenses committed before the effective date shall be governed by the law existing before such date, "which law is continued in effect for this purpose, as if this Act were not in force." [4]

Said Subsections (b) and (c) provide as follows:

"(b) Conduct constituting an offense under existing law that is no longer an offense under this Act may not be prosecuted after the effective date of this Act. If, on the effective date of this Act, a criminal action is pending for conduct that does not constitute an offense under this Act, the action is dismissed on the effective date of this Act. However, a final conviction existing on the effective date of this Act, for conduct constituting an offense under existing law, is valid and unaffected by this Act.

and he shall have power to revoke paroles and conditional pardons. With the advice and consent of the Legislature, he may grant reprieves, commutations of punishment and pardons in cases of treason."

4. It is to be observed that in Section 6.02 of the Texas Controlled Substances Act, however, that the Uniform Narcotic Drug Act (Article 725b, Vernon's Ann.P.C.), as well as Articles 725c, 725d, Vernon's Ann.P.C., and Article 4413(37), Vernon's Ann.C.S., are expressly repealed.

"(c) In a criminal action pending, on appeal, or commenced on or after the effective date of this Act, for an offense committed before the effective date, the defendant, if adjudged guilty, shall be assessed punishment under this Act if he so elects by written motion filed with the trial court requesting that the court sentence him under the provisions of this Act."

The provisions of Subsection (a), above, are generally in accord with the provisions of the present Articles 15, 16 and 17, Vernon's Ann.P.C.[5]

Said Subsection (b) generally is in accord with Article 14, Vernon's Ann.P.C.,[6] and with certain exceptions hereinafter noted, Subsection (c) generally relates to Article 13, Vernon's Ann.P.C.[7]

It would thus appear that once having set out the policy that the Act is to be applicable only to those offenses committed on or after its effective date and that the old law remains in effect for the prosecu-

tions of earlier offenses, the Act then proceeds by exceptions to undermine such policy. It is observed that while Section 6.-01(a) prohibits anyone finally convicted under existing law to take advantage of the Act's penalty provisions, it also provides that conduct constituting an offense under existing law which is not an offense under the Act shall not be prosecuted and any pending prosecution for such conduct shall be dismissed. Subsection (c) provides that a defendant who is prosecuted for an offense committed before the effective date of the Texas Controlled Substances Act and whose trial commences thereafter may elect in writing that he be sentenced by the court under the provisions of such Act. Such provision is similar to the present Article 13, Vernon's Ann.P.C., except that only the judge can impose the punishment under Section 6.01(c).

Such subsection also provides that a defendant in any "criminal action pending, on appeal . . ." may also utilize such procedure to be sentenced under the provi-

5. Article 15, Vernon's Ann.P.C., reads as follows:
   "When by the provisions of a repealing statute a new penalty is substituted for an offense punishable under the law repealed, such repealing statute shall not exempt from punishment a person who has offended against the repealing law while it was in force, but in such case the rule prescribed in article 13 shall govern."
   Article 16, Vernon's Ann.P.C., reads as follows:
   "If an offense be defined by one law and by a subsequent law the definition of the offense is changed, no such change shall take effect as to the offenses already committed; but one accused of violating the first law shall be tried under that law."
   Article 17, Vernon's Ann.P.C., reads as follows:
   "No offense committed and no fine, forfeiture or penalty incurred under existing laws previous to the time when this Code takes effect shall be effected by the repeal herein of any such laws, but the punishment of such offense and the recovery of such fines and forfeitures shall take place as if the law repealed had remained in force, except that when any penalty, forfeiture or punishment shall have been mitigated by any provision of this Code, such pro-

vision shall control any judgment to be pronounced after this Code shall take effect for any offense committed before that time, unless the defendant elect to be punished under the repeal law."

6. Article 14, Vernon's Ann.P.C., provides as follows:
   "The repeal of a law where the repealing statute substitutes no other penalty will exempt from punishment all persons who may have violated such repealed law, unless it be otherwise declared in the repealing statute."

7. Article 13, Vernon's Ann.P.C., provides as follows:
   "When the penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for an offense committed before the second shall have taken effect. In every case the accused shall be tried under the law in force when the offense was committed, and if convicted punished under the law; except that when by the provisions of the second law the punishment is ameliorated he shall be punished under the second unless he elect to receive the penalty prescribed by the law in force when the offense was committed."

sions of the Texas Controlled Substances Act.

■ It appears that such portion of said subsection (c) was intended to apply to those cases where notice of appeal has been given and the case is awaiting preparation of the appellate record in accordance with Article 40.09, Vernon's Ann.C. C.P., as well as those cases pending but undecided in the Court of Criminal Appeals. In most of these cases sentence will have been imposed under the law in existence prior to the effective date of the Texas Controlled Substances Act, for notice of appeal must be given after the sentence is pronounced, except in probation cases and cases where the death penalty has been assessed. See Article 44.08, Vernon's Ann.C.C.P., and a sentence is generally essential to the jurisdiction of this court. See Article 42.04, Vernon's Ann.C. C.P.

It is this portion of subsection (c) that has been called into question by the proceeding invoked by the relator, whose case is pending appeal, but whose record has not reached the Court of Criminal Appeals.

If, as relator contends, the provisions of Section 6.01(c) are mandatory, then the trial court would have no discretion except to sentence him under the provisions of the Texas Controlled Substances Act. See Sections 4.01 and 4.05 thereof.

If this is so, what is entailed in the factual situation presented by this proceeding? Sentence has already been imposed in the instant case (December 19, 1972) under the provisions of Article 725b, Vernon's Ann.P.C., prior to the effective date of the Texas Controlled Substances Act (August 27, 1973), which repealed said Article 725b. To sentence under the provisions of the new Act the court would have to set aside the earlier sentence or there would be two conflicting sentences in the same cause. If the earlier sentence assessing a punishment of "not less than two nor

more than thirty years" is set aside, then the judgment upon which it is based will also have to be set aside, and the jury verdict upon which the judgment is based will have to be set aside in whole or in part.

■ If it can be argued that the jury verdict need not be set aside in its entirety, then the court would have to set aside the jury verdict assessing punishment at the penalty stage of the trial and assess punishment relying upon the guilty verdict returned by the jury at the guilt or innocence stage of the bifurcated trial. See Article 37.07, Vernon's Ann.C.C.P. While the constitutional right of trial by jury does not encompass the right to have jury assess punishment, Emerson v. State, 476 S.W.2d 686 (Tex.Cr.App.1972); Hall v. State, 475 S.W.2d 778 (Tex.Cr.App.1972); Martin v. State, 452 S.W.2d 481 (Tex.Cr. App.1970); Green v. State, 474 S.W.2d 212 (Tex.Cr.App.1971); Johnson v. State, 436 S.W.2d 906 (Tex.Cr.App.1968); Jones v. State, 416 S.W.2d 412 (Tex.Cr.App. 1967), it is observed that an accused may have the jury assess punishment under the conditions prescribed in Article 37.07, Sec. 2(a), Vernon's Ann.C.C.P. And when the jury assesses punishment, Section 3(c) of such statute provides that " . . . the verdict shall not be complete until the jury has rendered a verdict both on the guilt or innocence of the defendant and the amount of punishment, where the jury finds the defendant guilty. In the event the jury shall fail to agree, a mistrial shall be declared, the jury shall be discharged, and no jeopardy shall attach."

Another question presents itself. The indictment when presented charged a felony, possession of marihuana, to which there was no lesser included offense at the time. The same was true at the time of appellant's conviction and subsequent sentencing. Now, may the court imposing a new sentence upon the appellant find him guilty of a misdemeanor [8] under the provisions of the said Article 6.01(c)? Does

8. See Article 47, Vernon's Ann.C.C.P.

the original indictment support such action, and does the District Court here involved have misdemeanor jurisdiction to dispose of the case as directed by Article 6.01(c), supra?

Putting aside all the ancillary problems and assuming, without deciding, that they can all be resolved, just what is the ultimate effect of the provisions of Section 6.-01(c) in the instant case? It would mean, if applied, that the trial court, without any discretion, must set aside the prior sentence based upon the judgment reflecting the jury's assessment of thirty (30) years as punishment, and then sentence or resentence the relator under the provisions of the Texas Controlled Substances Act. In view of the amount of marihuana shown to be possessed, the new conviction would be a Class B misdemeanor conviction which carries a penalty of 180 days in the county jail or by a fine not to exceed $1,000, or by both such fine and imprisonment. Not only must the punishment be reduced, changing the conviction from a felony to a misdemeanor, but the possible loss of the rights of citizenship resulting from a final felony conviction are avoided. See footnote #6, Smith v. Blackwell, 500 S.W.2d 97 (Tex.Cr.App.1973).

It seems too clear to question that if said Section 6.01(c) is applied in relator's case or those similarly situated upon written request, it would result in a less severe punishment being imposed.

"Commutation" as that term has been defined "means the change of punishment assessed to a less severe one." Ex parte Lefors, 165 Tex.Cr.R. 51, 303 S.W.2d 394 (1957); Smith v. Blackwell, supra, and cases there cited.

From the very wording of the subsection 6.01(c) it appears that the statute extends commutation to those previously convicted, whose cases are pending appeal on the effective date of the Texas Controlled Substances Act, as a mere gift or a matter of clemency upon the filing of a written request for sentencing or resentencing under the Texas Controlled Substances Act.

This would appear to be clearly violative of the constitutional provision placing such power of clemency in the hands of the Governor.

This is true because any statute which in any wise abridges or infringes upon the power granted to the Governor by Article IV, Sec. 11, would be unconstitutional, unless sustainable under some other constitutional provision. See Ex parte Redwine, 91 Tex.Cr.R. 83, 236 S.W. 96 (1922). When the power of clemency has been conferred by the Constitution, it cannot be exercised by the Legislature. Ex parte Miers, 124 Tex.Cr.R. 592, 64 S.W.2d 778 (1933). See also Gilderbloom v. State, 160 Tex.Cr.R. 471, 272 S.W.2d 106 (1954); Waggoner v. State, 161 Tex.Cr.R. 242, 275 S.W.2d 821 (1955); Smith v. Blackwell, supra.

Although the procedure authorized by said Section 6.01(c) could be referred to as a "sentencing" under the provisions of the Texas Controlled Substances Act, or a "resentencing" where sentence under the prior law has been imposed, it would appear to fall within the term "commutation." "By whatever name the grant of clemency may be called, the substance of the act and not the name by which it is designated control its effects." See Ex parte Black, 123 Tex.Cr.R. 472, 59 S.W.2d 828 (1933); Ex parte Lefors, supra. Cf. Ex parte Redwine, supra; Smith v. Blackwell, supra.

MEANING OF TERM "AFTER CON-VICTION" AS USED IN ARTICLE IV, SECTION 11 OF STATE CON-STITUTION

Relator candidly concedes that if the term "after conviction" as used in Article IV, Sec. 11 of our Constitution "means after the return of a verdict by a jury or after punishment is assessed" then the provisions of said Section 6.01(c) may in-

fringe upon the clemency powers of the Governor. Relator, in a well written brief, recognizing that an essential question with regard to the instant case is the meaning of the term "after conviction," vigorously urges that the term "means final conviction in the sense that a mandate of affirmance has been issued by the Court of Criminal Appeals of Texas or that no appeal has been taken from a conviction."

Appellant advances the theory that until there is such a final conviction there can be no infringement upon the Governor's constitutional powers to grant pardons, commutations, etc.

It would appear that the authorities are clearly contrary to appellant's contention.

In Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912), this court demonstrated that words "after conviction" do not necessarily embrace the sentence, but simply mean the verdict of conviction and the judgment on the verdict. The *Snodgrass* opinion pointed out that the term "after conviction" has been used in all of our constitutions since 1845, and that when the 1845 Constitution was adopted, the law did not require nor permit a sentence to be pronounced until after appeal and the judgment of the appellate court had been rendered; much as the modern day provision that sentence is not to be imposed in death penalty cases until the receipt of the mandate of affirmance of the Court of Criminal Appeals. The opinion, which reviewed many authorities, noted that from our first code a pardon issued by the Governor was a legal reason to be interposed in bar of sentence,[9] and that constitutions and codes have been adopted and revised with the same provisions thereby adopting its construction.

■ And the Snodgrass court forcefully pointed out that the meaning of the words of a Constitution at the time they were placed therein cannot be altered or

amended by legislation at a subsequent time.

Generally in accord with the Snodgrass opinion's interpretation of the term "after conviction" is Duke v. State, 106 Tex.Cr.R. 154, 291 S.W. 539 (1927); Goss v. State, 107 Tex.Cr.R. 659, 298 S.W. 585 (1927). See also 44 Tex.Jur.2d, Pardon, Reprieve, Etc., Sec. 7, p. 10.

Such construction is strengthened by the use of the same term in Article IV, Sec. 11A of the Constitution which provides that "after conviction" certain courts may suspend the imposition or execution of sentence and place defendants on probation. Article 42.12, Vernon's Ann.C.C.P., also provides that "after conviction" the court in granting probation must suspend the imposition of the sentence.

■ We cannot agree with appellant's contention that "after conviction" means a final conviction in the sense that he urges it.

If the provisions of Section 6.01(c) can be sustained, they must be sustained under some other theory.

## SUSTAINABLE UNDER STATE CONSTITUTIONAL ARTICLE IV, SECTION 11A?

May the action authorized by Article 6.01(c) with regard to cases on appeal be sustainable under the provisions of Article IV, Sec. 11A of our State Constitution?

This section of the Constitution is a limited grant of clemency to the courts by the people and does not encompass the general authority to grant commutations and pardons. The section itself has been held not to be self-enacting. State v. Klein, 154 Tex.Cr.R. 31, 224 S.W.2d 250 (1949). The present enabling acts, the present probation statutes, are Articles 42.12 and 42.13, supra.

9. See present Article 42.07(1), Vernon's Ann.C.C.P.

■ We find nothing in this constitutional provision which would authorize the action contemplated by said Section 6.01(c) with regard to cases pending on appeal. Neither is the suspension of the imposition or the execution of sentence involved, nor is probation involved, etc. The provisions of said Section 6.01(c) are far beyond the limited scope of Article IV, Sec. 11A of the Texas Constitution.

It is true, of course, that under the provisions of Section 7 of Article 42.12, Vernon's Ann.C.C.P., the probation period may be terminated or reduced if the defendant has completed one-third of the said period or two years of probation, whichever is the lesser, and it is true that this court has held that a trial court may, under such provisions, reduce the punishment from that originally assessed at the time of revocation of probation and impose a less severe punishment prior to sentencing. See Smith v. State, 399 S.W.2d 557 (Tex.Cr. App.1966); Beshear v. State, 169 Tex.Cr. R. 131, 332 S.W.2d 724 (1960); Capuchino v. State, 389 S.W.2d 296 (Tex.Cr.App. 1965); Trevino v. State, 464 S.W.2d 859 (Tex.Cr.App.1971); Potter v. State, 420 S.W.2d 948 (Tex.Cr.App.1967); Washington v. State, 361 S.W.2d 395 (Tex.Cr.App. 1962). Cf. De Leon v. State, 466 S.W.2d 573 (Tex.Cr.App.1971), and Quintero v. State, 469 S.W.2d 189 (Tex.Cr.App.1971), and cases there cited.

■ Such section of Article 42.12, supra, was enacted pursuant to the limited grant of authority of clemency to the courts encompassed in Article IV, Sec. 11A of the State Constitution, and surely cannot be stretched to cover a situation where there has never been a suspension of the sentence and probation is not involved. Merely because the courts perform a certain function under the express authority of the statute and the Constitution, this fact does not authorize courts to perform other such similar functions if in doing so such acts infringe upon the constitutional authority of other branches of government.

SUSTAINABLE UNDER CONSTITUTIONAL ARTICLE III, SECTION 1?

Are the provisions of Section 6.01(c) as they relate to cases pending on appeal sustainable under the provisions of Article III, Sec. 1 of the State Constitution delegating to the Legislature law-making authority including the right to define crimes and fix penalties therefor?

In Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162 (1912), the first suspended sentence law (Acts 1911, 32nd Leg., Ch. 44) was held invalid on several grounds, one of which was that it infringed upon the pardoning power of the Governor. Such bill had provided that in assessing punishment the jury could also recommend the suspension of sentence, but such recommendation had the effect only of conferring upon the court the power to consider whether he would suspend the sentence.

Thereafter, the Legislature enacted a second suspended sentence law (Acts 1913, 33rd Leg., Ch. 7) which included a provision that the jury's recommendation as to the suspension of the sentence was binding upon the trial court. In Baker v. State, 70 Tex.Cr.R. 618, 158 S.W. 998 (1913), such legislation was upheld. The court reasoned that it did not conflict with the Governor's pardoning power in that it did not relieve from punishment "after conviction" as that term is used in the Constitution, but provided that in certain types of cases no punishment should be imposed unless the individual should once again violate the law. It was held that defining crimes and fixing penalties was a legislative function and the Legislature was authorized to provide in certain cases that no punishment, under certain conditions, should be imposed. Since the bill was to be applied to future cases, the court noted that the "Legislature has not sought to excuse from punishment any one after conviction and penalty assessed."

■ It should be clear, without further elongating this opinion, that provisions of

Section 6.01(c) relating to cases pending on appeal cannot be sustained on the basis of the Legislature's right to define crimes and fix penalties. In each of the cases pending appeal in the trial court or in the Court of Criminal Appeals penalty under the former law has been assessed, sentence in most cases has been imposed, and such cases clearly fall within the term "after conviction" as used in our Constitution. See Article IV, Secs. 11 and 11A, Texas Constitution.

Therefore, when said Section 6.01(c) requires the trial court to sentence a defendant under the provisions of the Texas Controlled Substances Act where he has been previously convicted under the former law, sentenced and given notice of appeal, such action comes "after conviction" as that term is used in the Constitution. See Smith v. Blackwell, supra; Duke v. State, 106 Tex.Cr.R. 154, 291 S.W. 539 (1927); Goss v. State, 107 Tex.Cr.R. 659, 298 S.W. 585 (1927); 44 Tex.Jur.2d, Pardon, Reprieve, Etc., Sec. 7, p. 10.

And the same would be true whether the case "pending appeal" is still in the trial court under the provisions of Article 40.09, Vernon's Ann.C.C.P., or in the Court of Criminal Appeals.[10]

## CONCLUSION

We cannot reach any other conclusion except that the Legislature exceeded its power in enacting Section 6.01(c) of the Texas Controlled Substances Act insofar as it relates to criminal action pending on appeal on its effective date since it is violative of Article IV, Sec. 11 of our Constitution. To hold otherwise would be to announce that the Legislature has the authority to invest trial courts with the power to grant commutation, etc., "after conviction" upon written request, thus usurping the powers granted to the Governor by the Constitution.

The balance or remainder of said Section 6.01(c) relating to criminal actions for an offense committed before the effective date of the Act where the trial commences on or after the effective date of the Act need not fall or be declared void because of the unconstitutionality of part of subsection (c). The severability clause (Sec. 6.04) of the Texas Controlled Substances Act reads:

"If any provision of this Act or the application thereof to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable." See also Delorme v. State, 488 S.W.2d 808, 811 (Tex.Cr.App.1973); 12 Tex.Jur.2d, Constitutional Law, Sec. 47, p. 392.

Further, nothing in our holding today prevents the trial court from granting a new trial under the provisions of Article 40.09, Sec. 12, Vernon's Ann.C.C.P., even though the conviction was under the prior law and the penalty to be assessed, in the event of a new trial, would be governed by the Texas Controlled Substances Act. The same result would be reached following reversal by this court of any such case, or where this court abates an appeal for further proceedings under Article 40.09, supra, and the trial court subsequently granted a new trial under its provision.

In light of our holding we do not reach the question raised by the respondent that said Section 6.01(c) is also unconstitutional because the subject matter of such subsection is not expressed in the title to the bill (Texas Controlled Substances Act), and is

---

10. Where the case is pending in the Court of Criminal Appeals, it appears that Section 6.01(c) is in conflict with the provisions of Article 44.11, Vernon's Ann.C.C.P., and any attempt by a trial court to comply with Section 6.01(c) under such circumstances would be interfering with the jurisdiction of the appellate court.

thus violative of Article III, Sec. 35, Texas Constitution.

Further, we do not reach respondent's contention that provisions of Section 6.-01(c) are unconstitutional in that they chill the constitutional right to trial by jury in that only the court may assess punishment under such provisions.

Having decided to consider relator's application for writ of mandamus as an application for writ of habeas corpus, we are of the opinion that the same should be denied.

It is so ordered.

ROBERTS, Judge (concurring).

I concur in the results as enunciated by the majority. However, in my view, the effect of Section 6.01(c) of the Act is not significantly different from that of Section 4.06, previously held void in our opinion in Smith v. Blackwell, 500 S.W.2d 97 (1973). Therefore, I concur in this holding for the same reasons advanced in the concurring opinion in Smith v. Blackwell, supra.

Section 6.01(c) is even broader than Section 4.06, since it applies to any criminal action arising under the old law, rather than being limited to offenses involving marihuana. Since Section 6.01(c) covers a broader range of offenses, there is consequently a greater need for notice of its contents, which the caption of the Controlled Substances Act, with its failure to indicate that new penalties shall be retroactive, fails to provide.

The cases cited in the concurring opinion in Smith v. Blackwell, supra, apply with equal force to Section 6.01(c). Under the rules announced in those cases, the caption of the Act fails to give fair notice of the existence of Section 6.01(c), and that Section is void.

For the reasons stated, I concur.

DOUGLAS, Judge (dissenting).

The respondent contends that Section 6.-01(c) of the Controlled Substances Act is unconstitutional insofar as it infringes upon the power of the Governor to pardon pursuant to Article 4, Section 11, of the Texas Constitution and that the procedure of sentencing is not covered in the caption of the bill, contrary to Article 3, Section 35, of the Constitution of Texas, and that the Act infringes on the right to a jury trial. The second contention will be discussed first.

### Caption of the Act

Article 3, Section 35, of the Constitution of Texas, provides as follows:

"No bill, (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

In passing upon the constitutionality of Article 4.06 of the act in Smith v. Blackwell, 500 S.W.2d 97 (1973), this Court found it unnecessary to pass upon the title or caption of the act. The concurring opinion would have held the caption insufficient on the ground that fair notice was not given to the members of the Legislature and the public that a reduced penalty could be assessed for those convicted and who were serving sentences in the Department of Corrections.

Is the provision for sentencing under the act a component of the ultimate subject of the act so important that it must be set apart and distinctly expressed in the caption to give fair notice of its inclusion in the body of the act?

Liberal construction will be applied in determining whether a statute violates Article 3, Section 35, supra. Katz v. State, 122 Tex.Cr.R. 231, 54 S.W.2d 130. The requirement that the subject matter of the bill be expressed in its title is to be inter-

preted liberally and substantially, not strictly or literally. Consolidated Underwriters v. Kirby Lumber Company, 267 S. W. 703 (Tex.Com.App.1924).

The purpose of the requirement of expressing the subject of a bill in its title is to insure that the members of the Legislature and the public receive fair notice of the contents of a bill. Castellano v. State, Tex.Cr.App., 458 S.W.2d 73; White v. State, Tex.Cr.App., 440 S.W.2d 660. If a caption states the main subject of the act, it will be construed to cover any subsidiary matters reasonably connected, germane, incidental or relevant to the main subject. Lee v. State, 163 Tex. 89, 352 S.W.2d 724. All of the details and provisions of an act need not be expressed in the caption. State v. Rope, Tex.Civ.App., 419 S.W.2d 890. Original enactments are accorded a more liberal construction than where an amendatory act is involved. Praetorians v. State, 184 S.W.2d 299 (Tex.Civ.App.1944). With the above rules and cases in mind, we will consider the sufficiency of the caption.

The caption is more than one page and the statute is ninety-one pages in length. The caption announces that the act relates to the "regulation . . . of certain drugs and controlled substances; prescribing penalties . . . and repealing the Uniform Narcotic Drug Act." Looking at the caption as a whole, the reader would be forewarned that there was to be a wholesale revision of the existing law governing narcotic drugs. The phrase "prescribing penalties" alerts the reader that material changes may or will be made in the penalties formerly applied, especially in view of the fact that the caption expressly shows the intention to repeal the Uniform Narcotic Drug Act. The reasonable legislator or citizen reading the caption of the act would be put on notice that this was a proposed wholesale revision of existing drug law and an effort to wipe the statutory slate clean and begin anew.

In Ex parte Garcia, 125 Tex.Cr.R. 208, 67 S.W.2d 609 (1934), the statute was an amendatory act changing a former misdemeanor penalty for wife and child desertion to a felony. This Court held the change in penalty was authorized, and did not violate Article 3, Section 35, supra, by the captional reference of "prescribing fines, penalties, and punishments. . . .", saying:

"Notice is plainly given in the caption of the intended enactment of a law with penalties and punishments, such as the lawmakers deem appropriate." Id., at 610.

In Fouga v. State, 171 Tex.Cr.R. 489, 351 S.W.2d 240 (1961), this Court upheld another amendatory act which added a new article, defining the offense and fixing a new penalty therefor, to the statute governing wilful desertion and nonsupport. The caption of that act recited, in part:

"An Act amending Article 602, Penal Code of Texas, 1925, and adding a new Article . . . so as to define what shall constitute wilfully deserting, neglecting or refusing to provide support and maintenance of a wife . . . (and children); fixing a penalty; . . . . ."

This Court, citing Garcia, supra, as controlling, rejected appellant's argument that Rotner v. State, 122 Tex.Cr.R. 309, 55 S. W.2d 98, and Gilbert v. State, 122 Tex.Cr. R. 542, 56 S.W.2d 880, controlled, because in both of those cases there was a material change in the penalty, but "no mention whatsoever of any penalty to be included in the amending article." Fouga v. State, supra, 351 S.W.2d at 241. The Court then held that:

"The caption of the enactment . . . placed the public and the legislature on notice that the purpose of the act was, among other things, to add 'a new Article', (and) fix 'a penalty' . . . . ." Id., at 242.

Finally, in Wright v. State, 471 S.W.2d 407, we upheld a 1967 amendment to the Dangerous Drug Act, overruling the con-

tention that the caption was insufficient. White v. State, supra, was distinguished because in that case there were material changes in the penalty provisions of the original act, but there was no reference to such changes in the caption. In Wright, the caption recited that penalties were provided and increased. We held that:

> "Fair warning was given that penalties were to be included in the amendatory act and that they would vary the former uniform penalty of the 1959 act." Id., at 409.

In the instant case, the broad scope of the caption of the Controlled Substances Act gives fair notice to the public and to the Legislature that the "ultimate subject" of the Act is to repeal the mass of prior law governing the listed controlled substances and drugs, and to establish new provisions for drug regulation and enforcement. I would hold that the "prescribing penalties" clause in the caption is sufficient to place the reasonable reader under special notice that the penalty provisions under this Act would materially vary the prior penalty provisions. Under the rules of construction set out and discussed above, sentencing under the new Act would be but another valid means by which to accomplish the legislative object and, as such, it is immaterial that such subsidiary or component provisions are not expressly mentioned in the title. See Continental Bus System v. Carney, 310 S.W.2d 676 (Tex.Civ.App.).[1]

To hold otherwise would in many instances require the caption or title to be as long as the bill itself and Article 3, Section 35, of the Constitution would serve no useful purpose. In such an instance, each legislator or interested person would have to read the entire bill instead of the caption. The volume of proposed legislation is so

great that reading all of each bill by a legislator would render the task almost impossible.

It should be remembered that every reasonable intendment and presumption will be made in favor of the constitutionality and validity of a statute until the contrary is clearly shown. The Legislature is presumed to have regarded constitutional limitations or requirements in enacting laws as assiduously as the courts do in construing and applying them. 53 Tex.Jur.2d, Statutes, Section 184, pages 277–278, and cases cited therein. The presumption is that any act passed by the Legislature is constitutional and all reasonable doubt will be resolved in favor of the lawful exercise of legislative power. Ex parte Smith, 441 S.W.2d 544 (Tex.Cr.App.1969).

*Infringement Upon Pardoning Power*

Respondent next contends that Article 6.01(c) is unconstitutional because it constitutes an impermissible infringement upon the pardoning power of the Governor as provided by Article 4, Section 11, of our Constitution, which provides, in part:

> "In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction . . . to grant reprieves and commutations and pardons . . . ."

The issue here differs from that recently decided by this Court in Smith v. Blackwell, supra. There the petitioner had been convicted in the trial court, sentenced under former Article 725b, V.A.P.C., and his conviction affirmed on appeal and the mandate issued ordering that the judgment be carried out. In the instant case, applicant had given notice of appeal and the matter is still pending before the trial court. In holding the "resentencing" of

1. The caption in regard to Article 6.01(c) providing for sentencing for pending cases is quite different from the same caption in regard to Article 4.06, which contained the very unusual provision for resentencing after the case was out of the jurisdiction of the trial and this Court. See the concurring opinion in Smith v. Blackwell, supra. In many instances where statutes are amended, the punishment is ameliorated under Articles 13, 14 and 15, Vernon's Ann.P.C. These will be discussed later.

one "finally convicted," (after appeal, affirmation of the conviction and this Court's mandate) was unconstitutional, we noted that the result of such resentencing would constitute a commutation of sentence by the courts in violation of Article 4, Section 11. We noted that "Section 4.06 authorizing resentencing clearly applies . . . to those who are presently serving a sentence, are on probation or parole, or who have been discharged from sentences" and, therefore, "comes within the term 'after conviction' used in Article 4, Section 11 of our Constitution."

The decision in Smith v. Blackwell, supra, did not discuss the meaning of the term "after conviction" because under no reasonable construction could that phrase permit "resentencing" of one convicted after a mandate had been issued following appeal. In the instant case, the meaning of "after conviction" in Article 4, Section 11, is crucial, especially in light of the presence of the same phrase in Article 4, Section 11A.

Prior to the adoption of Section 11A of Article 4 by amendment in 1935, the breadth of the clemency powers of the Governor under Section 11 had been amply defined. The power to pardon was held to include the power to grant both full and conditional pardons, Snodgrass v. State, 67 Tex.Cr.R. 615, 150 S.W. 162, 176. The Legislature has the power to define crimes and prescribe penalties under Article 3, Section 1, Constitution of Texas, and has the authority to prevent punishment before conviction. Baker v. State, 70 Tex.Cr.R. 618, 158 S.W. 998; Ex parte Muncy, 72 Tex.Cr.R. 541, 163 S.W. 29. But the term "after conviction" was held to mean that the pardoning power of the Governor attached once the determination of guilt was made, either by plea of guilty or by verdict, Snodgrass v. State, supra; Duke v. State, 106 Tex.Cr.R. 154, 291 S.W. 539, and Goss v. State, 107 Tex.Cr.R. 659, 298 S.W. 585; and a pardon granted pending appeal is valid. 44 Tex.Jur.2d, Pardon,

Reprieve and Commutation, Section 7, page 10; Goss v. State, supra.

Under Section 11, the sole power of clemency was vested in the Governor, and this power is not subject to legislative control except as provided by the Constitution itself. Under the principle that a constitutional grant of general powers to one of the departments of government constitutes an implied exclusion of the other departments from the exercise of those powers. It is the general rule that a grant of the pardoning power to the executive precludes the legislative or judicial department from exercising it. 44 Tex.Jur.2d, Pardon, Reprieve and Commutation, Section 4, page 8.

In 1912, in Snodgrass v. State, supra, this Court held unconstitutional a legislative act empowering the district court to suspend the sentence of persons convicted of certain enumerated felonies, after a jury finding that the defendant had no prior felony convictions. This power was in the discretion of the court to suspend the sentence, and if the defendant committed no other felony during the period of the suspension, the court could set aside and annul the judgment of conviction. This Court held that the act granted to such a person an unconditional pardon, Id., 150 S.W. at 165, and is nothing but an attempted conferring of the pardoning power upon the district judge and . . . clothes him with all the authority in regard to conditional and unconditional pardons in these respects that is exercised by the Governor under the terms of the Constitution. Id., at page 181.

One year later, the same court, in Baker v. State, supra, apparently held to the contrary and upheld a similar statute.

Section 11A of Article 4 was adopted in 1935 to give the courts the clear power to suspend not only the imposition of sentence, but also the execution of sentence, to place the defendant on probation, and to reimpose such sentence, all under condi-

tions prescribed by the Legislature. Section 11A reads as follows:

"The Courts of the State of Texas having original jurisdiction of criminal actions shall have the power, after conviction, to suspend the imposition or execution of sentence and to place the defendant upon probation and to reimpose such sentence, under such conditions as the Legislature may prescribe."

The purpose of permitting suspension or imposition of sentence is to mitigate the penalties of the criminal law so far as the public interest will permit, and to aid in the reformation of one who has been convicted so that he can take his place in society. See the Interpretive Commentary, Article 4, Section 11A, Vernon's Annotated Texas Constitution. The present act providing for suspension of the execution of a sentence in felony cases, the Adult Probation and Parole Law, Article 42.12, V.A.C.C.P., was passed under the authority of Section 11A. Probation has been used and is still being used in a large percentage of the cases tried throughout the State. Under certain conditions in the present probation statute the penalty assessed by the jury may be reduced.

If the respondent's theory were carried to its logical conclusion, probation could not be granted once there is a finding of guilt and the penalty assessed, because the Governor may pardon at that time.

To determine the constitutionality of Section 6.01(c) of the Texas Controlled Substances Act, two questions must be answered: first, what is the nature of the sentencing procedure provided by Section 6.01(c); and, second, what is the effect upon the clemency powers of the Governor under Section 11 of Article 4?

The sentencing provision of Section 6.01(c) fits under no standard category of clemency as heretofore defined by the courts of this State.

Pardon has been defined as an act of grace which exempts the individual upon whom it is bestowed from the punishment the law inflicts for the crime he has committed. Snodgrass v. State, supra, at 165. It is further defined as a remission of guilt and as an act of grace by which the offender is released from the consequences of his offense. Whan v. State, Tex.Cr.App., 485 S.W.2d 275, 278; Young v. Young, 61 Tex. 191. A full and unconditional pardon absolves the party from all the legal consequences of his crime and of his conviction, direct and collateral, including punishment. Snodgrass v. State, supra, 150 S.W. at 176. In other words, a pardon reaches both the punishment prescribed for the offense and the guilt of the offender. See the dissenting opinion in Whan v. State, supra, 485 S.W.2d at page 279. A pardon must be accepted and received by the grantee for a pardon to be effective. Hunnicutt v. State, 18 Tex.App. 498. If accepted, the right of appeal is waived. See also 44 Tex.Jur.2d, Pardon, Reprieve and Commutation.

As defined above, there is no construction of Section 6.01(c) which would, in any way, constitute sentencing under the new act an unconditional pardon because there is no remission of guilt under this provision. Nor does Section 11A invade the exclusive power of the Governor to grant an unconditional pardon as that power has been heretofore construed.

At early common law there was no right to appeal and the return of a verdict of guilty represented a final judgment of conviction. Plucknett, A Concise History of the Common Law 213 (5th Ed. 1956); 1 Holdsworth, A History of English Law 214–16 (7 Ed. 1956); 2 Pollock and Maitland, The History of English Law 64 (2d Ed. 1898); 10 Halsbury, Laws of England 521 (3d Ed. 1955). See also: 2 Sherman, Roman Law in the Modern World 433–38 (3d Ed. 1937). In England the right to appeal was not recognized in misdemeanor cases until 1705, and did not become recognized in felony cases until 1907. Regina v. Paty, 2 Salk 503, 91 Eng.Rep. 431 (K.B. 1705); Criminal Appeals Act, 1907, 7 Edw.

7, c. 23, Sec. 3. The pardoning power was thus at early common law the only means by which a convicted offender could obtain review of his conviction or sentence from any branch of the government. The early decisions construing the right to pardon as arising upon the rendition of the verdict of guilt were consistent with the situation as it existed at early common law in that no right to appeal was recognized. The pardoning power was therefore a means of review of final convictions from which no appeal could be had, and was in effect the only remedy allowed for the review of convictions and sentences.

The probation laws have been enacted and utilized for many years. Changes in the punishments by the trial judge have been upheld. Article 11A of Section 4 of the Constitution of Texas was passed after the case of Snodgrass v. State, supra. Thus, the principle that the executive has the only power to lower a penalty has been eroded by specific constitutional provision as well as by practice.

The power to grant relief has been exercised by the Legislature and the courts ever since Texas has been a State.

Article 14 of the Penal Code provides:

"The repeal of a law where the repealing statute substitutes no other penalty will exempt from punishment all persons who may have violated such repealed law, unless it be otherwise declared in the repealing statute."

In 1 Branch's Ann.P.C.2d, Page 21, Section 20, it is written:

"The repeal of a statute pending prosecution does not exempt the offender from prosecution if the Legislature has otherwise declared . . . .

"If the statute is repealed pending prosecution without a saving clause, no punishment can be inflicted, although the act was done while the law was in force. The prosecution is 'pending' though the case is on appeal. [Citations of authorities omitted]"

Article 15, V.A.P.C., provides:

"When by the provisions of a repealing statute a new penalty is substituted for an offense punishable under the law repealed, such repealing statute shall not exempt from punishment a person who has offended against the repealing law while it was in force, but in such case the rule prescribed in article 13 shall govern."

Article 13, V.A.P.C., provides:

"When the penalty for an offense is prescribed by one law and altered by a subsequent law, the penalty of such second law shall not be inflicted for an offense committed before the second shall have taken effect. In every case the accused shall be tried under the law in force when the offense was committed, and if convicted punished under that law; except that when by the provisions of the second law the punishment is ameliorated he shall be punished under the second unless he elect to receive the penalty prescribed by the law in force when the offense was committed."

These three statutes have been applied by the courts even after judgment, sentence and while the cases have been on appeal. Relief has been granted without the use of the pardoning power of the Governor.

A "conditional pardon" has been defined as an act of grace which does not become operative until the grantee has performed some specified act, or where it becomes void when some specified event transpires. The Governor may annex to a pardon any reasonable condition which is not illegal, immoral, or impossible to perform, and the pardon so conditioned must be accepted by the grantee to become effective. A conditional pardon does not wipe out the legal consequences of a conviction; this can be done only by a full pardon. Warren v

State, 127 Tex.Cr.R. 71, 74 S.W.2d 1006. See also 44 Tex.Jur.2d, Pardon, Reprieve and Commutation, Sections 16–18, pages 16–17.

A commutation is defined as a substitution of a lesser for a greater punishment by authority of law. Unlike a pardon, it may be imposed without the consent of the convict or against his will. The exercise of the power of commutation limits and modifies the original sentence of the court, but does not annul the sentence; in effect it reaffirms the convict's guilt and simply mitigates the severity of the punishment. It does not remove the disabilities arising from conviction. See In re Lefors, 165 Tex.Cr.R. 51, 303 S.W.2d 394; 44 Tex. Jur.2d, Pardon, Reprieve and Commutation, Sections 2, 24, 25, pages 5, 21–22.

The effect of an order to sentence the applicant under Section 6.01(c) would fit precisely under none of the above described forms of clemency exercised by the Governor. If the applicant were to be sentenced under Section 6.01(c), a new sentence would be imposed. Under the new sentence the classification of the applicant's offense would be changed from that of a felony to a misdemeanor, and the punishment changed to a maximum of $1000 fine and 180 days in jail.

Such sentencing under Section 6.01(c) would have the elements of a conditional pardon and a commutation. Like commutation, a lesser punishment would be substituted for a greater one. Like a conditional pardon, an element of both the punishment and the legal consequences would be nullified and "acceptance" in the form of an election by the defendant is required.

While the acceptance of a pardon cuts off the grantee's right to appeal his conviction, Section 6.01(c) does not impose such a consequence. Neither does it relieve the applicant from the full range of punishment for the offense as it is defined under the new Act.

Section 11A of Article 4 specifically empowers the Legislature to grant the trial courts of this State "the power, after conviction, to suspend the imposition or execution of sentence and to place the defendant on probation and to reimpose such sentence. . . ." Section 3 of the Adult Probation and Parole Act, Article 42.12, supra, provides that the courts shall have the power after conviction or on a plea of guilty for any crime or offense, where the maximum punishment assessed does not exceed ten years' imprisonment, to suspend the execution of sentence and place the defendant on probation.

It should be noted that Section 7 of Article 42.12 provides at any time after the defendant has satisfactorily completed one-third or two years of the original probationary period, the period of probation may be reduced or terminated by the court. It further provides that upon satisfactory fulfillment of the condition and period of probation, the court shall amend or modify the original sentence imposed, if necessary, to conform to the probation period, discharge the defendant, set aside the verdict or withdraw a plea of guilty, and dismiss the indictment against the defendant, who shall thereafter be released from all penalties and disabilities resulting from his conviction. Sections 3 and 7 of Article 42.12, supra, have been applied many times.

The effect of a suspension of the execution of sentence and probation under Article 42.12, supra, is almost identical to that of an executive conditional pardon. Like a conditional pardon, its object is the reformation of the offender or the convict. 67 C.J.S. Pardons § 16, Conditional Pardon, page 592. Similar to a conditional pardon, the remission of the guilt of a defendant is conditioned upon the good conduct of a defendant, and the probation can be revoked when its conditions are violated. The conditions of probation may be established by the Legislature in the same manner as the Governor may condition a grant of executive pardon.

Therefore, I am of the opinion and would hold that Section 11A of Article 4

of the Texas Constitution authorizes the Legislature to provide for the courts to grant relief somewhat akin to a conditional pardon and parallel to the power of the Governor to grant conditional pardons under Section 11 of Article 4. The use of the same words, "after conviction," in both Sections, combined with the specific language of Section 3, Article 42.12, supra, "after conviction or a plea of guilty," makes it clear that the power to exercise this judicial function attaches at the same time as does the executive clemency. This judicial authority does not extend beyond the jurisdiction of the court; that is, once a mandate has issued from this Court (and has not been withdrawn or stayed) the power of judiciary terminates, and the power of executive becomes exclusive.

It should be understood that the powers to the judicial department through Section 11A do not affect the clemency powers in the executive department. Article 42.12, supra, by the authority of Section 11A, provides that the Legislature has the power to authorize the judiciary to sentence anew for a certain class of offenses. As noted, the executive clemency is an act of grace exempting the individual on whom it is bestowed from the punishment the law inflicts. It is founded on consideration of the public good and is to be exercised on the ground that the public welfare will be promoted. It may also be used to the end that justice be done by correcting injustice. Therefore, executive clemency is directed at the individual or group of individuals, while the judicial relief is directed at a class.

I would hold, therefore, that the executive and judicial powers may co-exist and complement each other in promoting the public welfare, assisting in the reformation of one convicted, and promoting justice.

Based upon this examination of the clemency powers of the executive and the mitigating powers of the judicial department of our State government as set forth by Sections 11 and 11A of Article 4, respectively, I would hold that the sentencing provisions of the Texas Controlled Substances Act, Section 6.01(c), Article 725f, V.A.C.C.P., are authorized under Article 4, Section 11A. Section 6.01(c), is, therefore, constitutional.

### Infringement on Right to Jury Trial

Lastly, the respondent contends that even if Section 6.01(c) be held applicable only to cases not yet tried, it must be held void as requiring a defendant to abandon any hope of jury assessment of punishment if he is to have benefit of the reduced penalty provision. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, is cited as authority. This contention was made in Jones v. State, Tex.Cr.App., 502 S.W.2d 771 (this day decided), where the case was tried after the effective date of this Act. This Court noted that Jones had a right to a jury trial under this Act and wrote:

"Article 37.07, V.A.C.C.P., provides that the judge shall assess the punishment unless the defendant makes an election in writing at the beginning of the trial that the jury assess the punishment. In most jurisdictions, after a finding of guilty by the jury, the court assessed the punishment in ordinary felony and misdemeanor cases. There is no constitutional right for the jury to assess punishment. See Jones v. State, Tex. Cr.App., 416 S.W.2d 412. 31 Am.Jur. 40; 50 C.J.S. Juries § 78, page 784; Williams v. Jones, Ky., 338 S.W.2d 693, cert. denied 365 U.S. 847, 81 S.Ct. 808, 5 L.Ed.2d 811."

One must elect to come under the new act. When he does so, he elects to be assessed a lighter sentence without a jury.

The record reflects that the applicant possessed four grams of marihuana. With good time credit on appeal he has served more than the maximum penalty which could be assessed against him under the Controlled Substances Act. In my opinion, he is entitled to the relief sought.