**Dissenting Opinion Filed April 18, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00128-CV**

**WARREN KENNETH PAXTON, JR., APPELLANT**

**V.**

**COMMISSION FOR LAWYER DISCIPLINE, APPELLEE**

**On Appeal from the 471st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 471-02574-2022**

## DISSENTING OPINION

Before Panel Justice Nowell, Justice Kennedy, Justice Miskel
Dissenting Opinion by Justice Miskel

I respectfully dissent because this Court has jurisdiction over an appeal from the interlocutory order denying a plea to the jurisdiction by the attorney general, a governmental unit. For the reasons set out below, I would deny the motion to dismiss the appeal. I would also reverse the trial court's order denying the plea to the jurisdiction and dismiss the Commission for Lawyer Discipline's action with prejudice.

1

# I. This Court Has Jurisdiction Because the Attorney General Is a Governmental Unit

This case requires us to decide whether the attorney general, acting in his official capacity, is a governmental unit under §§ 51.014(a)(8) and 101.001 of the Texas Civil Practice and Remedies Code. The Code provides for an appeal from an interlocutory order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8). The definition of governmental unit in § 101.001 includes the attorney general:

> (3) "Governmental unit" means:
>
> (A) this state and *all the several agencies of government that collectively constitute the government of this state*, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, *offices*, agencies, councils, and courts;
>
> . . . .
>
> (D) any other institution, agency, or *organ of government the status and authority of which are derived from the Constitution of Texas* or from laws passed by the legislature under the constitution.

*Id.* § 101.001(3)(A), (D) (emphasis added).

The attorney general is an organ of government derived from the Constitution of Texas: "The Executive Department of the State shall consist of a Governor, who shall be the Chief Executive Officer of the State, a Lieutenant Governor, Secretary of State, Comptroller of Public Accounts, Commissioner of the General Land Office, and Attorney General." TEX. CONST. art. IV, § 1 ("Officers Constituting Executive

2

Department"); *Univ. of the Incarnate Word v. Redus*, 518 S.W.3d 905, 910 (Tex. 2017) ("[A]n 'organ of government' is an entity that operates as part of a larger governmental system."); *see, e.g.*, *Perry v. Del Rio*, 53 S.W.3d 818, 822 (Tex. App.—Austin), *pet. dism'd*, 66 S.W.3d 239, 242 (Tex. 2001) ("[T]he governor, who is the chief executive officer of the state, function[s] as [an] organ[] of state government whose status and authority is derived from the Texas Constitution.").

The attorney general's office is also an agency of the state government. *See* TEX. GOV'T CODE ANN. §§ 402.008 ("The attorney general shall keep the attorney general's office in Austin."), 402.035(f-1)(9) (describing the office of the attorney general as a state agency).

The attorney general is an organ of government derived from the Texas Constitution who also presides over the office of the attorney general, a state agency. CIV. PRAC. & REM. § 101.001(3)(A), (D). Therefore, the attorney general qualifies as a "governmental unit" who may appeal from an interlocutory order denying a plea to the jurisdiction under § 51.014(a)(8). *Id.* § 51.014(a)(8); s*ee also Att'y Gen. Cornyn v. Fifty-Two Members of Schoppa Fam.*, 70 S.W.3d 895, 898 (Tex. App.— Amarillo 2001, no pet.) ("[W]e hold that the Attorney General is likewise a 'governmental unit' within the purview of the statute. Thus, we do have jurisdiction to consider appellant's appeal."); *State v. Fernandez*, 159 S.W.3d 678, 688 (Tex. App.—Corpus Christi Edinburg 2004, no pet.) (Castillo, J., concurring and

dissenting) ("The attorney general is a 'governmental unit' for purposes of section 51.014(a)(8).").

The Commission's suit against the attorney general is based on statements in a motion and brief filed by the State of Texas, prepared by the office of the attorney general, and identifying the attorney general as counsel of record. As discussed further below, the Commission's lawsuit is based on alleged acts by the attorney general in his official capacity as a governmental unit. Section 51.014(a)(8) therefore permits the attorney general to take an interlocutory appeal from the denial of the plea to the jurisdiction filed by the office of the attorney general. CIV. PRAC. & REM. § 51.014(a)(8). Accordingly, I would deny the Commission's motion to dismiss the interlocutory appeal.

## II. The Attorney General's Plea to the Jurisdiction Should Have Been Granted

Because I would deny the Commission's motion to dismiss the interlocutory appeal, I also address the merits of the attorney general's appeal of the trial court's denial of his plea to the jurisdiction.

## A. The Attorney General Was Acting in His Official Capacity

The Commission argues that, because it alleges that certain statements in pleadings by the State of Texas amount to misrepresentations, the attorney general cannot have been acting in his official capacity. I disagree.

4

This Court has held that actions based upon a government officer's performance of his official duties are official-capacity suits. *See Miller v. Diaz*, No. 05-21-00658-CV, 2022 WL 109363, at \*6 (Tex. App.—Dallas Jan. 12, 2022, no pet.) (mem. op.). The attorney general is the chief legal officer of the state. *Farmers Grp., Inc. v. Lubin*, 222 S.W.3d 417, 427 (Tex. 2007) (describing the attorney general as "the State's chief legal officer"); *Terrazas v. Ramirez*, 829 S.W.2d 712, 721 (Tex. 1991) (orig. proceeding) ("The Attorney General, as the chief legal officer of the State, has broad discretionary power in conducting his legal duty and responsibility to represent the State."). The attorney general's primary duties are to render legal advice in opinions to various political agencies and to represent the state in civil litigation. *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001). Specifically, "[t]he attorney general shall prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals." GOV'T § 402.021. Texas law grants this authority only to the attorney general, or the first office assistant acting in his place. *Id.*; *see also* § 402.001(a). Here, the Commission's lawsuit is expressly based on the attorney general's performance of this official duty. Warren Kenneth Paxton Jr. would have no power "in his individual/personal capacity as a Texas-licensed attorney," as the Commission argues, to plead original claims in the United States Supreme Court on behalf of the State of Texas.

The majority agrees that public officials sued in their official capacities are protected by the same immunity as their governmental units. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843–44 (Tex. 2007). To determine whether the complained-of conduct is individual-capacity or official-capacity conduct, courts look to the course of the proceedings to ascertain the nature of the liability sought to be imposed, reviewing the plaintiff's pleadings to determine the substance of the claims. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 377 (Tex. 2009); *Perez v. Physician Assistant Bd.*, No. 03-16-00732-CV, 2017 WL 5078003, at *4 (Tex. App.—Austin Oct. 31, 2017, pet. denied) (mem. op.). "[W]hether a suit is alleged explicitly against a government official in his 'official capacity,' it is the substance of the claims and relief sought that ultimately determine whether the sovereign is a real party in interest and its immunity thereby implicated." *GTECH Corp. v. Steele*, 549 S.W.3d 768, 785 (Tex. App.—Austin 2018), *aff'd sub nom. Nettles v. GTECH Corp.*, 606 S.W.3d 726 (Tex. 2020).

The substance of the Commission's pleadings challenges the manner in which the attorney general engaged in the duties assigned to him by law. *See Crampton v. Farris*, 596 S.W.3d 267, 275 (Tex. App.—Houston [1st Dist.] 2019, no pet.). The Commission disagrees with the facts, evidence, and law set forth in the State of Texas's suit and claims six statements rise to the level of misrepresentations. As a result, the Commission seeks to sanction the state's listed counsel of record—the

attorney general. In order to prove that the state's legal theories and factual allegations amount to "misrepresentations," the Commission apparently proposes to litigate the merits of *Texas v. Pennsylvania*[1] in a Collin County district court.

The Commission claims that, because it seeks a personal sanction against a government officer, its suit does not implicate the sovereign's liability. However, to determine whether this is an official–capacity suit, we look to the substance of the relief sought, and whether it would control state action. *GTECH Corp.*, 549 S.W.3d at 785. Even a suit that purports to name no defendant, governmental or otherwise, implicates sovereign immunity if it seeks relief that would control state action. *Id.* at 786 (citing *Ex parte Springsteen*, 506 S.W.3d 789, 802 (Tex. App.—Austin 2016, pet. denied)). Here, the Commission seeks to restrain the state's official in the exercise of his discretionary statutory and constitutional authority and therefore seeks to control state action. *See Creedmoor-Maha Water Supply Corp. v. Tex. Comm'n on Env't Quality*, 307 S.W.3d 505, 514 (Tex. App.—Austin 2010, no pet.); *Univ. of Tex. of Permian Basin v. Banzhoff*, No. 11-17-00325-CV, 2019 WL 2307732, at *4 (Tex. App.—Eastland May 31, 2019, no pet.) (mem. op.).

Ultimately, the Commission's claims, in substance, arise from its challenges to the attorney general's performance of his official duties while acting in his official capacity. Because the Commission has alleged acts within the attorney general's

---

[1] 141 S. Ct. 1230 (2020).

legal authority and discretion, its suit seeks to control state action and is an official-capacity suit.

## B.     The Commission Has Not Shown an Exception to Sovereign Immunity

The Commission argues that, so long as it alleges that the State of Texas's pleadings contain misrepresentations, then the state's officer may be personally sued—that is not the legal standard for bringing personal claims against a state official.  Essentially, the Commission is attempting to advance an ultra vires[2] claim under a lower standard than what the law requires.

The attorney general is a constitutional executive officer.  TEX. CONST. art. IV, § 1.  A public officer is an individual upon whom any sovereign function of the government is conferred, to be exercised by him for the benefit of the public largely independent of the control of others.  *Green v. Stewart*, 516 S.W.2d 133, 135 (Tex. 1974).  Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit.  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004).  "Governmental immunity[3] is premised in part on preventing suits

---

[2] Ultra vires is a Latin phrase meaning "beyond the powers."  *Ultra Vires*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[3] The difference between "sovereign" immunity and "governmental" immunity is the type of government entity being sued: "Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities.  Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts."  *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003) (internal citations omitted).

8

that attempt to control state action by imposing liability upon the state." *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 163–64 (Tex. 2016).

However, sovereign immunity "does not preclude prospective injunctive remedies in official-capacity suits against government actors who violate statutory or constitutional provisions." *Heinrich*, 284 S.W.3d at 369. "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372 (italics in original). "An *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017) (italics in original).

The test for whether immunity bars a suit against a government official is whether the law grants an official *absolute* discretion or whether the official was acting within *limited* discretion:

> governmental immunity bars suits complaining of an exercise of *absolute* discretion but not suits complaining of *either* an officer's failure to perform a ministerial act or an officer's exercise of judgment or *limited* discretion without reference to or in conflict with the constraints of the law authorizing the official to act. Only when such absolute discretion—free decision-making without any constraints—is granted are *ultra vires* suits absolutely barred.

9

*Houston Belt*, 487 S.W.3d at 163 (italics in original). In *Houston Belt*, the supreme court held that the government official was not granted absolute discretion because the governing ordinance specified data and formulas for the official to use. *Id*. at 158–59. Because the ordinance limited the official's discretion, he acted without authority when he used a method that was inconsistent with the ordinance. *Id*. at 169. Similarly, in *Heinrich*, the supreme court held that the plaintiff had pleaded an exception to governmental immunity because there was a fact issue as to whether board members acted outside their discretion by retroactively lowering pension payments despite a statute that prohibited a reduction in benefits. 284 S.W.3d at 378–79.

In *Hall*, however, the supreme court held that, because the chancellor was given unrestricted authority to interpret federal privacy law, the allegation that he misinterpreted the law did not constitute an ultra vires act or an exception to sovereign immunity. 508 S.W.3d at 241–43. Because the chancellor's discretion was not limited in *how* he reached his conclusions, even if he erred, he did not act outside his authority. *See id*. at 242.

Here, the statute granting authority to the attorney general does not impose specific restraints or otherwise limit his discretion: "The attorney general shall prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals." Gov't § 402.021. Unlike in *Heinrich* and *Houston*

*Belt*, this grant of authority specifies no limits and effectively grants the attorney general absolute discretion in how to carry out this sovereign function. "The office of Attorney General is one of ancient origin, and in all jurisdictions its duties have been multifarious, necessarily involving at all times the exercise of broad judgment and discretion. Even in the matter of bringing suits the Attorney General must exercise judgment and discretion, which will not be controlled by other authorities." *Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727 (Tex. 1924) (internal citations omitted). "The Attorney General is the chief law officer of the State, and it is incumbent upon him to institute in the proper courts proceedings to enforce or protect any right of the public that is violated. He has the right to investigate the facts and exercise his judgment and discretion regarding the filing of a suit." *Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943).

Of course, the law does not imply a grant of authority to government officials to act unlawfully. *See, e.g.*, *City of Dallas v. Gadberry Constr. Co., Inc.*, No. 05-22-00665-CV, 2023 WL 4446291, at *5 (Tex. App.—Dallas July 11, 2023, no pet.) (mem. op.). A state official's illegal or unauthorized actions are not acts of the state. *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 404 (Tex. 1997). Here, though, the Commission did not plead or present evidence showing that the attorney general was acting without legal authority; rather, the Commission's petition complains about

11

how the attorney general exercised his discretion under the legal authority conferred by Texas law. *See* GOV'T § 402.021.

The Commission claims that, out of ninety-two pages of Texas's allegations and briefing, six statements amount to misrepresentations. The attorney general responds that the Commission took three of the six statements out of context, and the other three statements reveal the Commission's policy disagreements with the merits of Texas's suit. Regardless, allegations that a government official reached an incorrect or wrong result when exercising his delegated authority are not facts that would demonstrate that the government official exceeded that authority. *See Creedmoor-Maha*, 307 S.W.3d at 517–18; *Banzhoff*, 2019 WL 2307732, at *4 ("That a state official reaches an incorrect or wrong result when exercising his delegated authority does not necessarily demonstrate that he has exceeded his authority.").

The Commission has failed to plead or present evidence showing that the attorney general acted wholly without authorization in his prosecution of this "action[] in which the state is interested before the supreme court," and it has therefore failed to meet the requirements of the ultra vires exception to sovereign immunity. *See* GOV'T § 402.021. The Commission might be entitled to have an opportunity to amend its pleadings to attempt to cure this defect. *See Koseoglu*, 233 S.W.3d at 839–40 (plaintiff must be given a reasonable opportunity to amend its

12

pleadings to attempt to cure the jurisdictional defects unless the pleadings are incurably defective). However, because I conclude below that the Commission has failed to state a claim for "Professional Misconduct," I would find that the defects cannot be cured and would grant the plea to the jurisdiction without allowing an opportunity to replead.

## C. Separation of Powers Bars the Commission from Seeking to Control an Executive Officer

The Texas Constitution divides the powers of government into legislative, executive, and judicial departments. *See* TEX. CONST. arts. II, § 1, III, IV, V. The attorney general is an officer of the executive branch of the Texas government. TEX. CONST. art. IV, § 1. The State Bar of Texas is an administrative agency of the judicial department of the Texas government. GOV'T § 81.011(a). The Commission for Lawyer Discipline is a standing committee of the State Bar of Texas composed of twelve members: six attorneys appointed by the president of the state bar and six public members appointed by the Supreme Court of Texas. *Id.* § 81.076(b). The Commission is therefore part of the judicial branch of the Texas government.

The Texas Constitution expressly states, "[N]o person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." TEX. CONST. art. II, § 1. The separation-of-powers doctrine prohibits one branch of government from exercising a power belonging inherently to another. *In re Dean*,

13

393 S.W.3d 741, 747 (Tex. 2012) (orig. proceeding). For example, the supreme court has explained that the attorney general is part of the executive department and is empowered by the constitution to issue advisory opinions to the governor and other officials. *See Patterson v. Planned Parenthood of Hous.*, 971 S.W.2d 439, 442–43 (Tex. 1998) (citing TEX. CONST. art. IV, §§ 1, 22). The constitution's separation-of-powers article therefore prohibits courts from issuing advisory opinions, because that is the function of the executive rather than the judicial department. *Id*. at 443.

A separation-of-powers violation can occur when one branch unduly interferes with another branch so that the other branch cannot effectively exercise its constitutionally assigned powers. *Martinez v. State*, 323 S.W.3d 493, 501 (Tex. Crim. App. 2010); *see also In re Turner*, 627 S.W.3d 654, 660 (Tex. 2021) (per curiam) (orig. proceeding) (explaining that "the interference by one branch of government with the effectual function of another raises concerns of separation of powers"). Where one branch of government unduly interferes with the powers of another, any resulting order is void. *See, e.g.*, *Ex parte Giles*, 502 S.W.2d 774, 780 (Tex. Crim. App. 1973); *In re Tex. Dep't of Fam. & Protective Servs.*, 679 S.W.3d 266, 271 (Tex. App.—San Antonio 2023, orig. proceeding); *In re D.W.*, 249 S.W.3d 625, 635 (Tex. App.—Fort Worth 2008, pet. denied) (en banc). To determine whether there has been an undue interference, courts first review the scope of the

14

powers constitutionally assigned to the governmental actor and then consider the impact of another branch's conduct on that governmental actor's exercise of those powers. *Tex. Comm'n on Env't Quality v. Abbott*, 311 S.W.3d 663, 672 (Tex. App.—Austin 2010, pet. denied).

Both sides agree that courts retain the inherent judicial power to sanction attorneys practicing before them. *See, e.g.*, *Brewer v. Lennox Hearth Prods., LLC*, 601 S.W.3d 704, 718 (Tex. 2020). The question presented in this case is whether the Commission may sue the attorney general in his private capacity over statements in a pleading by the State of Texas.

First, I consider the scope of the powers constitutionally assigned to the attorney general. The constitution assigns the attorney general the power to "represent the State in all suits and pleas in the Supreme Court of the State in which the State may be a party . . . and perform such other duties as may be required by law." TEX. CONST. art. IV, § 22. Texas law provides that the attorney general has the duty to represent the state and requires that he "shall prosecute and defend all actions in which the state is interested before the supreme court and courts of appeals." GOV'T § 402.021. The attorney general's investigation of a case and determination of the facts are outside the judicial branch's control: "Since the duty of the attorney general to institute suits in such cases requires an investigation of the case, and a determination [of the facts and the probability of success] . . . the courts

cannot control his judgment in the matter and determine his action." *Lewright v. Bell*, 63 S.W. 623, 624 (Tex. 1901) (holding that courts cannot compel the attorney general to perform an official duty that involves discretion). When the executive branch acts within its constitutional discretion, its acts are only politically examinable and are insulated from judicial second-guessing. *Van Dorn Preston v. M1 Support Servs., L.P.*, 642 S.W.3d 452, 457–58 (Tex. 2022).

Texas law has given the attorney general the exclusive power to prosecute and defend all actions in which the state is interested before the supreme court, and it has not limited his discretion as to what legal claims and factual allegations to plead in those actions. Therefore, the Commission's claims are within the scope of authority assigned to the attorney general.

Second, I consider the impact of the judicial branch's conduct on the attorney general's exercise of those powers. The "misrepresentations" alleged by the Commission's petition challenge the attorney general's assessment of the facts, evidence, and law at the time the State of Texas's suit was filed. The attorney general argues that "through the threat of sanctions affecting his personal law license, the Commission aims to deter the Attorney General from instituting high-profile and contentious matters of which the State Bar disapproves" and that "this effort is directed at controlling the conduct of the State's chief legal officer in the exercise of core executive functions." The attorney general further argues that "[i]f

16

the Commission's standard were correct, it would mean that any lawyer who appears on an initial pleading must personally guarantee, at the risk of his law license, that evidence sufficient to prevail on every allegation in a petition will be procured." The attorney general represents that "[a]pplication of such a standard in this case would grind the Office of the Attorney General to a halt, as the Attorney General is responsible for more than 30,000 civil cases at any given time."

Here, the State of Texas filed the underlying suit, and the Commission disagrees with the state's allegations. The State of Texas is not required to defend each allegation in each pleading to an unelected administrative committee of the judicial branch—that would constitute undue interference with the powers assigned to the attorney general.

As discussed above, the Commission has not shown that the attorney general's actions were unlawful or without authority. The Commission is attempting to interfere with the attorney general's exercise of his discretionary authority in carrying out his constitutionally assigned powers. This attempt by the judicial branch to control how the attorney general may plead allegations in the state's lawsuit is an unconstitutional encroachment on powers granted to the executive branch, and it violates the separation-of-powers article of the Texas Constitution. Any order resulting from the Commission's suit would be void. *See Giles*, 502 S.W.2d at 780; *DFPS*, 679 S.W.3d at 271; *D.W.*, 249 S.W.3d at 635.

**D. The Commission Has Not Alleged "Professional Misconduct" Under the Rules**

The Texas Rules of Disciplinary Procedure establish the rules to be used in the professional disciplinary and disability system for attorneys in the State of Texas.[4] TEX. R. DISCIPLINARY P. 1.02, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A-1.

The Chief Disciplinary Counsel investigates a Complaint to determine whether Just Cause exists. *Id.* 2.12(A); 1.06(G). "'Just Cause' means such cause as is found to exist upon a reasonable inquiry that would induce a reasonably intelligent and prudent person to believe that an attorney either has committed an act or acts of Professional Misconduct requiring that a Sanction be imposed . . . ." *Id.* 1.06(Z). "Professional Misconduct" includes eight categories of conduct defined by Rule 1.06(CC). *Id.* 1.06(CC). An investigatory hearing on a disciplinary Complaint will be set before an Investigatory Panel and may result in the Chief Disciplinary Counsel's finding Just Cause. *Id.* 2.12(F), (G). If there is a finding of Just Cause to believe an attorney has committed "Professional Misconduct," the Chief Disciplinary Counsel must give the respondent written notice of which rules of professional conduct were violated. *Id.* 2.14(D). Upon receiving this notice, the respondent may seek to have the Complaint heard in a district court. *Id.* 2.15.

---

[4] Notably, Rule 1.02 expressly narrows the objective of the rules to attorneys *in* the State of Texas, rather than broadly referring to attorneys *licensed by* the State of Texas. TEX. R. DISCIPLINARY P. 1.02.

If the respondent elects to proceed in district court, the Commission must transmit a petition that contains a description of the acts and conduct that gave rise to the alleged "Professional Misconduct." *Id.* 3.01(E), 1.06(CC) (definition of "Professional Misconduct"). At trial, the Commission has the burden to prove its Disciplinary Action by a preponderance of the evidence. *Id.* 3.08(C), (D). If the trial court finds that the Respondent's conduct constitutes "Professional Misconduct," the court shall determine the appropriate Sanction to be imposed. *Id.* 3.09. Therefore, in this suit, the Commission is asking the trial court to find that the allegations in its petition constitute "Professional Misconduct" as defined by Rule 1.06(CC). *Id.* 1.06(CC).

The Commission's petition generally alleges that "[t]he acts and omissions of Respondent, as hereinafter alleged, constitute professional misconduct." However, the petition does not specify which of the eight categories of "Professional Misconduct" defined by Rule 1.06(CC) it alleges the respondent committed. The petition further states, "The facts alleged herein constitute a violation of the following Texas Disciplinary Rules of Professional Conduct: 8.04(a)(3) A lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The Commission's petition does not allege that the respondent's conduct resulted in discipline in any other jurisdiction.

19

Under Rule 1.06(CC), the first category of "Professional Misconduct" includes "[a]cts or omissions by an attorney, individually or in concert with another person or persons, that violate one or more of the Texas Disciplinary Rules of Professional Conduct." *Id.* 1.06(CC)(1).

However, the second category of "Professional Misconduct" expressly governs attorney conduct that occurs in another jurisdiction, like the United States Supreme Court. Under category 2, "Professional Misconduct" includes "[a]ttorney conduct that occurs in another jurisdiction, including before any federal court or federal agency, and results in the disciplining of an attorney in that other jurisdiction, if the conduct is Professional Misconduct under the Texas Disciplinary Rules of Professional Conduct." *Id.* 1.06(CC)(2). In other words, if the respondent attorney's conduct occurs in another jurisdiction, to be "Professional Misconduct," it must result in the discipline of the attorney in the other jurisdiction *and* be Professional Misconduct under the Texas Disciplinary Rules of Professional Conduct. *Id*.

The Commission argues that it need only show a violation of the Texas Disciplinary Rules of Professional Conduct to prove "Professional Misconduct" in this suit. However, that interpretation of the Rules would make category 2 entirely redundant. Under the surplusage canon, "[i]f possible, every word and every provision is to be given effect (*verba cum effectu sunt accipienda*) . . . . None should needlessly be given an interpretation that causes it to duplicate another provision or

20

to have no consequence." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012); *cf. Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) ("[C]ourts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless"). There would be no need to express a separate rule for conduct in another jurisdiction, with the added requirement of discipline in that other jurisdiction, if all violations of the Texas Disciplinary Rules of Professional Conduct can be punished under category 1, regardless of where they were committed.

To defeat the plea to the jurisdiction, the Commission must allege facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Von Dohlen v. City of San Antonio*, 643 S.W.3d 387, 393 (Tex. 2022) (citing *Miranda*, 133 S.W.3d at 226). For example, a statute may waive sovereign immunity, but to defeat a plea to the jurisdiction, the plaintiff must state a claim that actually violates the statute. *See id.* at 392; *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). A trial court's review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). If the relevant evidence is undisputed or the plaintiff

21

fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.*

To prevail on its claim at trial, the Commission has the burden to prove that the respondent's conduct constitutes "Professional Misconduct." TEX. R. DISCIPLINARY P. 3.08(D), 3.09, 1.06(CC). For conduct occurring before a federal court, the Commission must allege *both* that the conduct violates the Texas Disciplinary Rules of Professional Conduct and that it resulted in the discipline of the attorney in that other jurisdiction. *Id.* 1.06(CC)(2). The Commission has not claimed that the respondent was disciplined by the U.S. Supreme Court, and the attorney general represents that the U.S. Supreme Court has not disciplined any lawyer in connection with Texas's suit. Therefore, even if the Commission has alleged a violation of the Disciplinary Rules of Professional Conduct, the Commission has not alleged "Professional Misconduct." *See id.*

The Commission has failed to raise a fact question or state a claim that satisfies the requirements of the Rules. It has not pleaded a claim for which there is an exception to immunity, and it cannot defeat the plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend.").

## III. Conclusion

I conclude that the Commission's suit complains of actions taken by the attorney general in his official capacity as a governmental unit. Because the Commission's suit is based on an executive officer's discretionary performance of the powers assigned exclusively to him, I would deny the Commission's motion to dismiss the interlocutory appeal and reverse the trial court's order. For the reasons stated, I would render judgment granting the attorney general's plea to the jurisdiction on sovereign-immunity and separation-of-powers grounds and dismissing the Commission's suit with prejudice. *See Koseoglu*, 233 S.W.3d at 846.

/Emily Miskel/

230128df.p05

EMILY MISKEL
JUSTICE

23